Our third case this morning is Anderson v. City of Atlanta. Ms. Germain. Good morning, your honors. May it please the court, my name is Meredith Germain and I along with my law partner Valerie Ross represent the defendant appellant City of Atlanta in this matter. We're here today essentially on two different issues. One is the city's appeal of the district court's order granting summary judgment to the plaintiffs when it held that the city's 1982 sign code, specifically subsection 16-28.019, was content-based and unconstitutional under the First and Fourteenth Amendments. Let's hone in on subparagraph 7, right? Yes, your honor. It's our position based on the district court's order that the repeal and amendment of the 1982 sign code and specifically that subsection that was deemed unconstitutional rendered the plaintiff's constitutional challenge moot and any district court order and judgment regarding that was essentially an advisory opinion which is impermissible at law. Let's talk though about what the Fulton County Superior Court ruled and whether that's really a content-based restriction in the light of the city of Austin case. Yes, your honor. It seems to me it's clear that the parties have been litigating this on an assumption that is an erroneous premise that that's a content-based restriction and when I read the Supreme Court's decision, I don't see how it can be. I agree with you, your honor. Under Reagan National, we do believe that it is a content-neutral distinction and under Reagan National, the court held that the city's outdoor advertising ordinance which distinguished between on-premises and off-premises signs and specially regulated the latter was facially content-neutral and was not subject to strict scrutiny. And the Superior Court said these signs were unlawful based on that content-neutral provision, right? Yes. From earlier code. Judge McBurney of the Fulton County Superior Court held that under section 16-28.0197, which regulated on-premises and off-premises signs, that they did not meet those restrictions and his decision was based upon the location, the number, and the size of the signs. There was no content-based purpose or justification shown and specifically in the city of Austin, an off-premises sign was defined as a sign advertising a business, person, activity, goods, products, or services not located on the site where the sign is installed or that directs persons to any location not on that site. Well, it seems to me then the 1982 sign code as applied to your client then is constitutional. Yes, Your Honor. I agree with you. And we also agree that as applied to our client, it was constitutional. The only provision in the code that was applied to multimedia was that subsection 7. None of the other challenged... Does that kill your case? I'm sorry, Your Honor? Doesn't that doom your case? No Your Honor. Why not? I don't believe, because we're arguing... Oh, you're right. That dooms... That dooms opposing counsel's case, yes. For the city of Atlanta, this helps our case. And as applied, as you said, the Fulton County Superior Court didn't say any justification or content-based purpose when they rendered that decision. Specifically, Judge McBurney held the problem for the city and the owner of the signs is that the Sioux signs ran afoul of the ordinance in at least four ways, and no variance was ever granted. First, size. They're too big. The sign covering the north face of the building is nearly 4,000 square feet in area, or roughly 20 times the limit for business identification signs. And the rooftop sign exceeded 900 square feet, or more than four times the ordinance's limit for the business identification sign. Second, the distance. The signs are within 300 feet of I-85, so they can't be general advertising signs, which is an off-premises sign, because under subsection 7, you couldn't have a general advertising sign within 300 feet of an interstate highway. The court also noted that there was a question of classification. They didn't know if it was a business sign or a general advertising sign. However, they said it really didn't matter because they didn't fit the distance requirements or the size requirements. All of that was content-neutral. The court also noted that the matter of the number of signs. The 1982 sign code only permitted one business identification sign on the property, and this had two signs. So Judge McBurney of the Fulton Superior Court said that the original permits allowing two signs at a single location with outsized dimensions and less than 300 feet from I-85 were wrongly issued and unlawful at inception. Now, with respect to the other, excuse me, with respect to the other 1982 sign code provisions that plaintiffs challenge, they lack standing to challenge those because none of those provisions were actually applied to them. And to have standing, we all know to bring a First Amendment claim, you must show that you meet constitutional standing as well as prudential standing requirements. In New South Media Group, the City of Rainbow decided by this court on November 14, 2025, and the Honorable Abadu was one of the presiding judges in that decision. The court addressed standing when New South, a sign company, brought First Amendment challenges to a sign code alleging multiple provisions were unconstitutional. And they went through the whole standing doctrine that you have to show that there is a case or controversy, and they must show that there was an injury suffered that is concrete, particularized, actual or eminent, that it was likely caused by the City's action, and that a favorable judicial decision would likely redress the injury. Now, this court in New South found that New South's injury was caused solely by the billboard prohibition in Section 214. However, New South did not challenge that provision. It only challenged other provisions related to content-based exemptions, time limits, and discretionary decision-making. But we're not causing... I mean, this is long-standing. I mean, the Camp decision that involved the City of Atlanta 20 years ago established this point, that you only have standing to complain about the portions of the ordinance that are actually being applied to you. Yes. Yes, Your Honor. We think that applies here as well. So, plaintiffs can only complain about... You know, I missed the point that you're representing Atlanta. Yes. All right. So, the bottom line is, you agree after wrongly thinking earlier that this was a content-based restriction. Now, because of the supplemental question that we asked, you recognize the provision that was applied to your adversary, to Multimedia, Subsection 7, is not content-based, you say, under the Reagan National, City of Austin, whichever you want to call it. Correct, Your Honor. And everything else wasn't applied to them, and they have black standing to complain about it. Yes, Your Honor. And that's really the case, isn't it? Yes, Your Honor. We believe so. And we also believe you can also decide on the grounds of mootness, because... Yeah, I don't know about that. Okay. Well, what does it mean that the arrest citation cited the 1982 permit, ordinance? I think it made reference to it, because even in Judge McBurney's decision, it talked about that you have to, a sign will be legal under the 2015 sign ordinance, if it's permitted under those current regulations, or if it's a legal non-conforming sign under prior regulations. And here, you have to then look at to legal non-conforming. And I think the issue that plaintiffs have, and it somewhat goes into the mootness argument and vested rights, because you can't have vested rights in a permit that was issued that was illegal from its inception. So here, it's referencing the 1982 sign code, because you have to look at that to determine if it's legal non-conforming. However, they're not reenacting the 1982 sign code. And here, they had no vested rights, because as Judge McBurney pointed out, these permits were never lawfully obtained. They didn't meet the requirements of subsection 7. And with respect to the mootness challenge, mootness is one of the important implications and limitations placed on the power of the federal judiciary. By its very nature, a moot suit cannot present an Article III case or controversy, and the federal courts lack subject matter jurisdiction to entertain it. If a lawsuit is mooted by subsequent developments, any decision of a federal court rendered on the merits of the case would constitute an advisory opinion. I mean, look, they're challenging the 1982 code, right? Yes, Your Honor. That's not moot. Well, it is moot. I mean, they may be wrong for the reasons that we've already gone through this morning, but I don't see how that's moot. Well, I believe it's moot to the extent that the 2015 sign code completely removed any of the allegedly unconstitutional provisions. Yeah, but your argument is that the constitutional remains, that's the one that was actually enforced against your opponent. Their challenge to that, at least, is not moot, right? Well, I still disagree with that because for them to hold or to— There's a difference between it fails on the merits. Their argument fails on the merits and that it's moot. I understand your position, Your Honor. I understand your position. I mean, there are portions of the 1982 code, right, that remain in effect so long as those portions are constitutional, the subsection 7 being one of them. Yes, Your Honor. Right? Yes, Your Honor. It's still in effect. Yes, Your Honor. And that can be lawfully applied to your opponent. That's your argument, as I understand it. Yes, Your Honor. Therefore, their challenge is not moot. It fails on the merits, but it's not moot. You see? Yes, Your Honor. I understand. Okay. And we agree. Okay. Okay. All right. Thank you, Ms. Germain. You saved a couple minutes. Yes.  Let's hear from your adversary. May it please the Court. My name is Craig Kunkas. I represent Multimedia Technologies and its president, Jeffrey Anderson. I'm here today with Ken Girard, who represents Peach Hospitality of Georgia, and I'll be presenting arguments on behalf of all the plaintiffs in the underlying case. Chief Judge Pryor, I think I'm going to be able to change your mind about the constitutionality of the 1982 sign code. How? And I'm going to start dealing with the Court's question. Okay. The Court asks whether Section 162819, subsection 7 of the 1982 sign code makes a content-neutral distinction between on- and off-premises signs and whether the 1982 sign code, as applied to Multimedia, is therefore constitutional. Under that Supreme Court decision, right? Right. Under the Reagan decision. The answer to both these questions is no, because subsection 7 is content-based and because the 1982 sign code, as applied to Multimedia, is not constitutional for at least three reasons. The first two of these reasons explain why this Court should not look at subsection 7 in isolation, and the third reason explains why subsection 7 is not, sorry, why subsection 7 is content-based, even if the Court decides to focus solely on that provision. Well, let's look at that last part. And before jumping into that point, I do want to point out that this issue has not been briefed and I would request supplemental briefing, but I'll go right to why subsection 7. How much of a supplemental brief would you like? We could do this in 10 pages, sure. Sure. 10 pages. Okay. How long do you need? Within two weeks. Within two weeks. Simultaneous? Actually, can I go in three weeks based off of other scheduling conflicts I have?  Okay, thank you. Three weeks, 10 pages, simultaneous letter briefs from the parties. Now, going right to why subsection 7 is content-based and distinguishable from Reagan, it's important to look at the definitions in the sign codes. In Reagan, the City of Austin sign code defined this term off-premise sign as a sign advertising a business, person, activity, goods, products, or services not located on the site where the sign is installed or that directs persons to any location not on that site. The 1982 sign code, however, has a different definition for off-site signs. This is the 82 code signs which are for the purpose of directing attention to a business, profession, product, service, activity, accommodation, attraction, or entertainment not principally conducted, sold, or offered on the premises. Correct, Your Honor. Pretty close. And what's most relevant here is that section 162817 does not include the term person unlike in Reagan. And why does that matter? The definition of general advertising signed in the 1982 sign code not including the word person allows for political signs which would not be allowed for under the Reagan, under the definition in the Reagan case. Thus, it allows for temporary campaign signs that advertise a candidate running for office. This distinction to the sign code issue in Reagan is important. As this court noted in its question, subsection 7 purports to only apply to general advertising signs. Specifically, it prohibits any general advertising sign within 300 feet of a highway or certain other roads. Under the definition of general advertising sign in the 1982 sign code, subsection 7 then prohibits directing attention to a business or charitable activity from being located within 300 feet of a highway, but it would not prohibit signs directing attention to a person running for office such as a temporary campaign sign for a person running for mayor. Accordingly, because the definition of general advertising sign excludes signs relating to persons, subsection 7 is content-based. Simply put, one cannot determine whether a sign relates to a person running for office or to a charitable activity or to a business without looking at the content of such signs. Thus, unlike Reagan... Wouldn't a business be a person? I don't believe so, Your Honor, because in the Reagan definition, person is defined separately and there is no definition of the word person in the record for the portion of the sign code that's currently in the record. Thus, unlike Reagan, the 1982 sign code's off-premises distinction is not agnostic as to content. The six circuits holding in Norton Outdoor Advertising, Inc., the Village of St. Bernard, Ohio, in 2024 is instructive, and that's 99F4-840. In that case, the relevant ordinance regulated signs based principally on whether what is being advertised is located on or off-premises. The ordinance, however, had an exemption for public service signs, examples of those signs are signs telling people to get a COVID shot or to buckle their seatbelts. The Sixth Circuit recognized that to exempt this universe of signs from the regulations pertaining to outdoor advertising signs, the court must inherently look to the content of the signs. Thus, it held that the definition of outdoor advertising signs is content-based. Likewise here, subsection 7 is a content-based restriction because the city must go beyond whether a sign is off-premises to inquire whether the sign advertises a person or not. So because it distinguishes, because the definition does not include the term person, you have to look at the content to see if it's advertising a person or not. Now- Is that as applied then, or it's facial? Every business is a person. I did not see anything in the 1982 sign code defining the term person to include the word business and- Georgia, does Georgia law not have a dictionary act? Well, this is governed by the sign code, not, this is not a Georgia statute. And again, this is a clear distinction from the actual language of the sign code at issue in Reagan where the term person is set aside separately from business. And Judge Abudu, could you repeat your question? I'm sorry. Well, I guess I was just trying to understand. I think my quick reading of Reagan, it seems like it was generally talking about facial challenges. You can't categorically call these kinds of signs content-based, which then suggests that, you know, scenario by scenario, case by case, as opposed to what you're proposing is that as just a matter of a facial challenge, it's unconstitutional. Well, Your Honor, if the section is being applied to us according to the camp decisions and the decisions in CAGE Outdoor, we have the ability to facially challenge the provisions being applied to plaintiffs. Yeah, but Judge Abudu's point is that if it's not unconstitutional in all applications, then you can't make a facial challenge. That's the kind of challenge you're making here. Well, Your Honor, according to this court's holding in camp, it said plaintiffs have standing to challenge the, sorry, I'm paraphrasing here, but making the argument based off the camp decision, plaintiffs have standing to challenge the permitting scheme set forth in Section 1628.19 because the Superior Court relied on that section to determine that the permits for the subject signs were wrongfully issued in Judge McBurn's decision that opposing counsel was talking about. Thus, the permitting scheme set forth in Section 1628.19 affects multimedia's activities and plaintiffs have standing to challenge it. In camp, the court held that camp may challenge the provisions of the festival ordinance that affect its activities and that the overbreath doctrine allows camp to mount a facial challenge to the provisions of the festival's ordinance that harm its ability to hold a festival. That's exactly analogous to the situation right here. Also, in KH outdoor LLC v. City of Trustville, which was decided by this court in 2006, right after the camp decision, this court rejected the argument that a signed company only had standing to challenge the section of an ordinance that was used to deny its permit applications. Instead, this court held that the signed company also had standing to challenge the section of the ordinance that provides the purpose and intent of the ordinance as a whole and which prohibits signs that are not permitted. And that was the citation on that is 458 F3D 1261. The same logic applies here and plaintiffs have the ability to challenge Section 162819 as a whole, which is the permitting scheme. And that turns to my other argument that this court should not look at subsection... KH outdoor does not say that you can challenge the entire scheme. It says you can challenge the... It said that you could challenge the section of the scheme that... The section of the scheme, not the entire scheme. Excuse me. The language from the decision was that they could challenge the provision that provides the purpose and intent of the ordinance as a whole. And here, you can read, if you're challenging, for example, subsection 7 and there's some other provision of the ordinance that sheds light on the meaning of that provision, then that's part of your challenge. But all you're challenging is the provision that's being applied to you. Well, and Your Honor, our argument is based off KH outdoor and CAMP. This court should not look at subsection 7 in isolation. Rather, the court should look at Section 162819 as a whole because it contains the permitting scheme at issue. I mean, this runs right into CAMP, what you're arguing right now. Hear me out, Your Honor. And exemptions are relevant to the subparts. The introduction to Section 162819 generally requires signs to be permitted before they can be erected. Subsection 1, however, contains numerous content-based exemptions from the sign permit requirements. The city does not dispute that. Here, that's relevant to what the Superior Court's analysis was because the Superior Court held that the permits for the subject signs were wrongfully issued in 1993 because the subject signs did not comply with the restrictions in subsection 7. When analyzing this application of subsection 7, this court also must consider the categories of signs that are exempt from the permit requirements pursuant to subsection 1. In other words, the finding that a permit is improper pursuant to subsection 7 must be read in conjunction with the exemptions to the permit requirements set forth in subsection 1. Since these exemptions are clearly content-based, Section 162819 as a whole is a content-based restriction. At a minimum, subsection 7 is content-based because you have to read the exemptions from subsection 1 into it. The way the statute is structured is there's a general permit requirement, there's a series of exemptions, and then there's a series of rules that can be applied to deny a permit. When one of those rules is used to deny a permit, you still have to look at the prior exemptions that is read into the subsequent subsections. And because those prior exemptions are content-based, you either have to rule that Section 162819 as a whole is content-based, or at a minimum that subsection 7 is content-based because the prior exemptions get read into it. And then my third argument, going to a previous question that Judge Abudu asked to the city, is the alleged violation of the 1982 sign code referenced in the city's arrest citations is not limited to subsection 7. Indeed, the arrest citations that the city issued include an alleged violation of the 1982 Atlanta zoning ordinance. Thus, the arrest citations list an alleged— Yes, it might, though the Superior Court's ruling was based on that. But this action is not based on the Superior Court's ruling. This action is based on the enforcement actions that the city is taking, which are the arrest citations. And the arrest citations list an alleged violation of the entire 1982 sign code without any limitations. We're not appealing the Superior Court ruling. We're challenging the enforcement actions by the city. The city never amended such citations, and the city never argued that the alleged violations of the 1982 sign code listed in the citations was limited to subsection 7. Thus, the evidentiary record does not support a finding that the city only sought to apply section 162819 subsection 7 to plaintiffs, as indicated by this court's question. Rather, the city broadly sought to apply the entire 1982 sign code to plaintiffs. And, Chief Judge, prior to your question, it's important to note— The arrest citations come after the Superior Court rules, right? Correct, Your Honor. And to your question, Georgia law is clear that in arrest citations, the city is required to either, one, recite the language of the statute that sets out all the elements of the offense charged, or two, allege the facts necessary to establish a violation of a criminal statute. That's Strickland v. State, 349 Georgia App, 673, 2019. Here, the arrest citations neither list the language of subsection 7 nor allege facts necessary to establish a violation of the provision. Thus, the record does not support a finding that the arrest citations allege a violation of subsection 7 of the 1982 sign code. They only allege a general violation of the 1982 sign code. So what is being applied to us is the whole 1982 sign code, which gives us standing to challenge the whole 1982 sign code. Um, we appreciate the court providing us the opportunity to provide supplemental briefing. We ask that the court affirm the judgment entered by the District Court. We will provide supplemental briefing, and in the event that the court disagrees with our analysis, we encourage the court to remand this question to the District Court to have it be decided or it can be fully fleshed out. Because the posture of this case is our motion for summary judgment. The city did not move for summary judgment. We have not had an opportunity to respond to any motion by the city. It's us prevailing on our motion, and we should have an opportunity to respond to any arguments the city brings before the court, uh, reverses. Okay, uh, thank you. Um, let's hear from Ms. Germain. Ms. Germain, I take it you don't have any objections to supplemental briefing? No, Your Honor. Three weeks, ten pages each. No, Your Honor. Thank you. I'd like to address first, uh, counsel's argument regarding the general advertising signs that they don't apply to persons. Under section 16-28.017, it provides definitions. And while general advertising sign, it is a sign, which is for the purpose of, I won't read the whole, but under subsection one of that section is the definition of sign. And within that definition, it does include person. So, the broader definition of sign is incorporated into, so it is, it does also include a person. Um, we, I also want to point out to the court, um, with respect to their standing to challenge the other provisions that weren't applied to them, uh, the Granite State Outdoor Advertising Inc., the city of Clearwater case decided by this court in 2003. There, the city denied plaintiff's permit applications because they violated restrictions on billboards. The plaintiff challenged the constitutionality of both billboards, motivating the denials, and other provisions regarding the sign, contending that they were unconstitutional. The court discussed the constitutional requirements and held that they only had standing to challenge the provision that applied to them and not all of the other challenges. And we believe that that applies here, uh, and they should only have standing to challenge 16-28017, subsection seven. Um, and we will ask this court to reverse the district court's granting of summary judgment. Um, we believe based on this being a content neutral. We would vacate it and, uh, and remand. But, um, let's, this will help if we get some supplemental briefs. Okay. Thank you, Your Honor. If you don't have any questions, further questions, that's it. I don't hear any. Thank you. Thank you, Your Honors. Thank you. Okay, we're gonna move to our last.